# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

NOAH IWAN, individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

NISSAN NORTH AMERICA, INC., and NISSAN MOTOR CO., LTD.,

        Defendants.

Case No.:

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Noah Iwan ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" defined below), by and through his counsel, brings this Class Action Complaint against Defendants Nissan North America, Inc. ("NNA") and Nissan Motor Co., Ltd. ("NMC") (together "Nissan" or "Defendants"), and alleges as follows upon personal knowledge individually, and as to all other matters upon information and belief, and based upon the investigation of his counsel.

## <u>INTRODUCTION</u>

1.     This is a class action lawsuit brought against Nissan by Plaintiff individually and on behalf of a class of current and former owners and lessees of model year 2022 and 2023 Nissan Pathfinder vehicles ("Class Vehicles" or "Vehicles").

2.     The rear braking systems and rear brake pads in the Class Vehicles are defective. As discussed below, the defect causes excessive rear brake pad wear with ordinary vehicle use that results in premature brake pad degradation ("Defect"). This compromises the Vehicles' braking systems and results in costly repairs.

3.      Brake pads in automobiles play a critical role in both the safety and performance of cars and car braking systems. Properly functioning braking systems allow brake pads to create the friction necessary to slow a vehicle on command and bring it to a stop. When brake pads excessively wear or prematurely degrade with ordinary use, a safety concern arises because the braking systems cannot create the friction needed to slow or stop a vehicle on command. This is the exact concern posed by the Defect in the Class Vehicles.

4.      Due to the Defect, the brake pads and braking systems in the Class Vehicles routinely experience issues and fail before the expiration of the parts' expected lifespan. They also frequently fail within the Class Vehicles' 3 year/36,000 mile manufacturer warranty. Nevertheless, consumers report that Nissan fails to replace worn brake pads or otherwise repair the prematurely failed braking systems in the Class Vehicles under warranty, and instead charges owners and lessees large sums of money to replace brake pads, claiming it is ordinary wear and tear.

5.      Nissan's Monroney stickers (i.e., the sheets/stickers displayed in the Class Vehicle windows at dealerships), dealership literature, Warranty Information Booklet ("Warranty"), and Owner's Manual disclose nothing about the Defect, despite these being appropriate channels through which to do so. For example, the Monroney stickers for the Class Vehicles tout the brake features and the Warranty discusses brakes in numerous locations. Each would have been an appropriate location to identify the Defect, but Nissan failed to do so.

6.      Nissan failed to disclose this material information to consumers despite knowing about the Defect. It has long known of the Defect from, *inter alia,* internal warranty and repair records submitted directly to it and to its authorized dealers, complaints collected by the National Highway Transportation Safety Administration ("NHTSA"), and consumer complaints on other message boards.

7.      Nissan also knew about the Defect based upon its own rigorous and extensive pre-sale testing of the Vehicles, which replicates actual consumer use of the Vehicles and their braking systems (including engaging the brake pads). Because of the ubiquitous nature of the Defect in Class Vehicles, Nissan's pre-sale testing would have necessarily revealed the Defect.

8.      Despite its pre-sale, superior knowledge of the Defect and the ancillary safety issues that it can cause, Nissan has failed to fix the Defect and provide an adequate repair or recall the Class Vehicles in a manner that would adequately address it. Instead, Nissan failed to disclose, and actively concealed, the Defect from the public, and continues to withhold this material information while reaping the benefit of revenues generated from repair and replacement services necessitated by premature brake pad failure.

9.      Plaintiff brings this action individually and on behalf of the classes defined herein for breach of express and implied warranties, common law fraud and fraudulent omission, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act and, in the alternative, for unjust enrichment.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different states. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391 because Defendant NNA regularly transacts business in this District, has corporate headquarters located in

this District, is subject to personal jurisdiction in this District, and is deemed to be a citizen of this District. Additionally, both Nissan Defendants advertise in this District and have received substantial revenue and profits from sales and/or leases of the Class Vehicles in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

12.     This Court has personal jurisdiction over Defendants because they are or incorporated in this District, have conducted substantial business in this District, and intentionally and purposefully placed Class Vehicles into the stream of commerce within Tennessee and throughout the United States.

## PARTIES

### Plaintiff Noah Iwan (Illinois)

13.     Plaintiff Noah Iwan is a resident of Elburn, Illinois. In November 2024, Plaintiff purchased a used 2023 Nissan Pathfinder – Rock Creek edition – from Old Orchard Nissan, an authorized dealership in Skokie, Illinois. Plaintiff uses his Vehicle in an ordinary and expected manner.

14.     When the Vehicle had approximately 23,000 miles on it, Plaintiff took it to Gerald Nissan of North Aurora, an authorized Nissan dealership in North Aurora, Illinois, for maintenance and oil change. The dealership technician informed Plaintiff that the brake pads on his vehicle were worn and needed to be replaced. With the understanding that Plaintiff would have to pay out of pocket for the replacement costs, Plaintiff Iwan wanted to seek a second opinion.

15.     Plaintiff Iwan subsequently took his Vehicle to Belle Tire in Batavia, Illinois, and paid $468 out of his own pocket for parts and labor to replace the worn rear brake pads. His vehicle was in the shop for four hours and he was unable to use his Vehicle during that time.

16.     Plaintiff Iwan has been harmed as a result of Nissan's conduct as alleged herein. Had Nissan disclosed the Defect to him, he would not have purchased the vehicle or would have paid less for it than he did.

17.     Plaintiff Iwan served a demand letter on Nissan North America, Inc. and Nissan Motor Company, LTD, on September 8 and September 9, respectively. As of the date of this filing, Defendants have not responded to Plaintiff Iwan's letters.

**<u>Defendants</u>**

18.     Defendant Nissan North America, Inc. ("NNA") is a California corporation with its principal place of business located at One Nissan Way, Franklin, Tennessee 37067.

19.     Defendant Nissan Motor Co., Ltd. ("NMC") is a corporation organized under the laws of Japan. NMC was founded in 1933 and headquartered in Yokohama, Japan. NMC manufactures and distributes automobiles and related parts. It also provides financing services. NMC delivers a comprehensive range of products under various brands that are manufactured in Japan, the United States, Mexico, the United Kingdom and other countries. Upon information and belief, NMC is the parent and 100% owner of NNA.

20.     At all relevant times, NNA and NMC were engaged in the business of designing, manufacturing, marketing, distributing, and selling automobiles, including but not limited to the Class Vehicles, and other motor vehicles and motor vehicle components, in Tennessee and throughout the United States.

21.     Whenever, in this Complaint, reference is made to any act, deed, or conduct of Defendants or Nissan, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees or representatives who

was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of Defendants.

## FACTUAL ALLEGATIONS

**A.      Automobile Brake Pads and Braking Systems**

22.      Until the late 1800s, automobiles largely relied upon a wooden block to brake. A vehicle operator would push a lever that would rub the block against the wheels, creating friction and stopping the moving vehicle. As cars began to travel at higher speeds, the wheels became more complex, necessitating a more complex braking system.

23.      Today, brake pads are a key component to a modern automobile's braking system and ensure safe vehicle operation. Disc brakes contain brake pads which utilize friction to slow down and stop an automobile in motion. This is accomplished by converting kinetic energy to thermal energy within the braking system.

24.      When the operator of an automobile presses on the brake pedal, a master cylinder is activated that sends brake fluid through hoses down to a brake caliper—a clamp-like component that houses the brake pads and pistons. As a result, the pistons and the brake pads in the calipers squeeze the steel brake rotor discs that rotate with the wheel, causing friction and pressure which ultimately causes the vehicle to slow down and, if the brakes are applied forcefully enough, stop the vehicle.

25.      A diagram of how a disc brake system works is below:



26.     Functional brake pads are critical to safety in automobile operation because they are the primary components responsible for slowing or stopping a vehicle by creating friction against the brake rotors. They are essential for numerous reasons:

    a.   **Stopping Power**: Brake pads directly determine a vehicle's ability to stop effectively. Worn or faulty pads reduce friction, increasing stopping distances and the risk of collisions, especially in emergencies.

    b.   **Control and Stability**: Properly functioning brake pads ensure consistent braking force across all wheels, maintaining vehicle stability and preventing skids or loss of control, particularly during sudden stops or on slippery surfaces.

    c.   **Heat Dissipation**: Brake pads are designed to withstand and dissipate the intense heat generated during braking. If pads are worn or of poor quality, they can overheat, leading to brake fade (reduced braking effectiveness) or failure, which is dangerous at high speeds or in heavy traffic.

d. **Wear Indicator**: Modern brake pads often include wear indicators that alert drivers when pads are thinning, preventing metal-on-metal contact with rotors, which can damage the braking system and compromise safety.

e. **Interaction with Safety Systems**: Brake pads work in tandem with advanced safety features like anti-lock braking systems (ABS) and electronic stability control (ESC). Worn pads can impair these systems, reducing their ability to prevent wheel lockup or maintain traction.

27. Premature brake pad failure and degradation can lead to catastrophic failure, endangering the driver, passengers, and others on the road.

**B. The Brake Pads in the Class Vehicles are Defective**

28. The 2022 and 2023 Nissan Pathfinder models use rear disc brakes as their primary braking system, with calipers and pads that act on rotors. This is confirmed by official Nissan parts catalogs listing rear disc brake rotors and pad kits (e.g., part D4060-6TA5B for 2022–2025 models).

29. The rear braking system and brake pads in the Class Vehicles are defective. Consumers widely report that their Class Vehicles experience brake pads prematurely failing in their rear brakes.

30. Numerous class members report premature rear brake pad failure with low mileage that is well in advance of the expected useful life expiring for the brake pads. A sampling of the many complaints about this issue by consumers is below:

## WTH is with the 2022's rear brakes???

*Rothrock!* Nissan here in Allentown, PA just quoted me almost $400 for pads and resurface/almost $700 for pads and new rotors to fix my 2022 that's at 23.7k miles! Folks, this is straight up 🐂💩! Fortunately (?) I'm already scheduled to get new tires at Mavis this weekend and they'll do new rotors for the dealer's resurface price. Discussion on the *Pathfindertalk.com* forum shows others having the same issues with the brakes barely having life. Anyone here seeing the same thing?

What can I/we do to stick it to Nissan? This is my third PF lease in a row and I thought for sure at the end of year three we would keep this one, but now that I'm reading and paying for all this only a year and a half in, forget it!

⬆ 4 ⬇    💬 56    🔖    ↗ Share

Share your thoughts

Sort by: Best ▾    🔍 Search Comments

**Tip_Which** · 2y ago

I have a 2022 Nissan pathfinder platinum and my rear brake pads went out at barely over 20 k miles. I've never in my life owned a car with brand new brakes pads going out after 20k miles. Wtf is this?

**ExpensiveMacaron6414** · 2y ago

I have a 22 platinum, just replaced back pads at 35k. Front needs all new pads and rotors. Not happy, glad I leased!

⬆ 2 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

**Nearby_Statement6095** · 3mo ago

Glad I found this thread. Went into the Nissan dealer for an inspection and they said the rears were at 4B. It is a '23 Pathfinder with 14500 miles. I was like, wtf. I've been doing 3 year leases on cars for many years now and I've NEVER had to replace rear brakes.

⬆ 2 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

**Difficult-Action1757** · 1y ago

Same issue, got the 22 in Jan... Needs all new rear brakes, I've only had it 5k miles 😤

⬆ 2 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

**iximmiv** · 1y ago

I'm literally in the same situation you are right now. Same car same miles same price

⬆ 3 ⬇    💬 Reply    🏅 Award    ↗ Share

**Ok-Abrocoma2084** · 1y ago

My 2022 pathfinder platinum has 34,000 miles. I've replaced the rear brakes twice already and all four tires at 23,000 miles. They keeps telling me it's the electronic brake system that is making the rear brakes wear out faster. Absolutely ridiculous. I can't wait to get rid of this truck. I'm going back to Honda. I didn't have to replace any brakes until 65,000 miles.

⬆ 2 ⬇    💬 Reply    🏅 Award    ↗ Share    ···

1

https://www.reddit.com/r/nissanpathfinder/comments/16bsa6b/wth_is_with_the_2022s_rear_brakes/



**R**

RichL
Registered 🇺🇸
Joined Mar 11, 2023
2 Posts

Discussion starter · #1 · Mar 11, 2023

I have a 2022 Pathfinder with 28000 miles. The rear brakes are worn out. Is anyone else noticing rear brakes wearing out around this mileage? Also, it is mostly highway driving. Secondly, since the E brake is connected to the caliper, I am guessing these are the twist in caliper pistons?

🔵 swede978, .77369 and itsmmmeagan

💬 Reply   ❝❝ Quote   👍 Like                    🔖 Save   ⌁ Share

---

**M**

MikeZ
Registered 🇺🇸
2024 Pathfinder SV Premium
Joined Aug 25, 2021
461 Posts

#3 · Mar 11, 2023

I have 2022 PF SV with 14800 miles. Couple of weeks ego I started feeling slight vibration and hear rubbing noise coming from rear brakes on the highway speed braking (65-75 MPH). Took it to dealership, they resurfaced rotors under warranty. A week later after resurfacing I have same symptoms again. I guess I will be going again to the dealership..

💬 Reply   ❝❝ Quote   👍 Like                    🔖 Save   ⌁ Share

---

SmokyMountainKat
Registered 🇺🇸
Joined Mar 15, 2023
5 Posts

#9 · Mar 15, 2023

My '22 SL is at the dealer right now getting new rear brake pads and the rotors resurfaced. It has just under 30k miles. It was down to 1 mm in the back apparently. They said it's because all the fancy features use the rear brake.

🔵 .77369 and itsmmmeagan

💬 Reply   ❝❝ Quote   👍 Like                    🔖 Save   ⌁ Share

---

Mike-El
Registered 🇺🇸
Joined Apr 19, 2023
1 Posts

#18 · Apr 19, 2023

Glad I found this post. 15k miles on my 22 Pathfinder. Fought with the dealership and customer service. Had to pay $377 to get the rear brakes replaced at the dealership. Was told they were totally bare. Clearly Nissan is ignoring a large issue.

🔵 ribaven

💬 Reply   ❝❝ Quote   👍 Like                    🔖 Save   ⌁ Share

---

**M**

Mzitter236
Registered 🇺🇸
Joined Apr 19, 2023
1 Posts

Toggle multi-quote

#19 · Apr 19, 2023

I went to do the rear brakes on my 2022 pathfinder today. Something with the electronic parking park I could not get the caliber to disengage. Put it on the scanner to see if they could help like with the 2020 but no such luck.
Any guidance would be appreciated. I refuse to pay 510 for the dealer to do the rear brakes and rotors.

💬 Reply   ❝❝ Quote   👍 Like                    🔖 Save   ⌁ Share

2

---

² https://www.pathfindertalk.com/threads/2022-pathfinder-rear-brakes.41054/



31.     Numerous consumers have complained to NHTSA about this safety issue, as seen below[4]:



https://www.reddit.com/r/nissanpathfinder/comments/1eqrh9o/rear_brakes_gone_after_23k_wor king_with_nissan/
[4] https://www.nhtsa.gov/vehicle/2022/NISSAN/PATHFINDER/SUV/FWD#complaints

**1 Associated Product** ▲

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| NISSAN | PATHFINDER | 2022 |

---

**AUGUST 7, 2025**  NHTSA CAMPAIGN NUMBER: 11678951  

## COMPONENT: SERVICE BRAKES

**NHTSA ID Number:** 11678951

**Incident Date:** May 15, 2025

**Consumer Location:** COTO DE CAZA, CA

**Vehicle Identification Number:** 5N1DR3DJ1NC******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | I have 44K miles and had to replace my rear brakes 4 times. I paid for them twice and Nissan covered the cost the first time when they ran out at 7K miles and the last time they replaced the rear brakes and rotors. There is something seriously wrong with the rear brake being undersized. I had a 2015 Pathfinder and on average got 41K per brake set. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

**1 Associated Product** ▲

**Vehicle**

| MAKE | MODEL | YEAR |
|------|-------|------|
| NISSAN | PATHFINDER | 2022 |

---

**AUGUST 4, 2025**  NHTSA CAMPAIGN NUMBER: 11678393  ^

## COMPONENT: SERVICE BRAKES

**NHTSA ID Number:** 11678393

**Incident Date:** August 4, 2025

**Consumer Location:** EL PASO, TX

**Vehicle Identification Number:** 5N1DR3BA2NC******

**Summary of Complaint**

| | | |
|---|---|---|
| Crash: | No | The vehicle has just under 20,000 miles and when reversing is getting a high pitched squeak. There are a ton of online forums where other owners of a 2022 Nissan Pathfinder are stating they're being told that the rear brake pads are literally worn down to metal while the front brakes are perfectly fine. This is clearly a defect of some sort where the brake system should not be malfunctioning like this. |
| Fire: | No | |
| Injuries: | 0 | |
| Deaths: | 0 | |

**C. Nissan Knew About the Defective Rear Braking System in the Class Vehicles**

32. Nissan has long known or should have known of the Defect from multiple sources. These sources include through presentation of the Vehicles to dealerships for Defect-related repairs and brake pad replacement; pre-release design, manufacturing, and testing data; consumer complaints made directly to Nissan, collected by NHTSA, and/or posted on public online forums (such as those above); and aggregate data and complaints from authorized dealers and other sources. Yet, Nissan failed to disclose and actively concealed the Defect from the public, and continued to distribute and sell the Vehicles without disclosing the Defect to consumers prior to purchase or lease.

33. Consumers presenting the Vehicles for Defect-related service made Nissan aware of the issue. Nevertheless, when owners and lessees of the Vehicles presented to dealerships with the Defect, they routinely are told that the premature brake pad degradation was to be expected, is not a real issue, is ordinary wear and tear, and are forced to pay for this safety-related repair at their own expense.

34. It is also standard practice for automobile manufacturers to engage in extensive pre-sale testing of their vehicles. Nissan did so for the Vehicles and tested the brake pad and braking systems prior to selling the Vehicles. This pre-sale testing replicated actual consumer use of the brakes and braking system and thus would have necessarily revealed the Defect to Nissan. Given the immediacy, frequency, and duration of consumer complaints about the Defect, Nissan learned or should have learned about the Defect before the Vehicles were taken to market.

35. Federal regulations require automobile manufacturers to build vehicles that comply with the Federal Motor Vehicle Safety Standards (49 C.F.R. § 571). The existence of these standards necessarily requires Nissan to extensively test its vehicles prior to selling them. During

this and other quality validation testing conducted by its engineers prior to their sale, Nissan became aware of the defective brake pads and braking system.

36.    Nissan's design, engineering, and testing data is unavailable to Plaintiff without discovery, but upon information and belief, analysis of this data would have revealed that the brake pads and braking system was insufficient for its intended use and would inevitably malfunction in form of premature brake pad failure.

37.    Nissan also knew or should have known of the Defect based on the raft of complaints they received directly from consumers. The large number of complaints, and the consistency of their description, alerted Nissan to the Defect.

38.    Nissan has sole viewership of and access to the full universe of complaints they received regarding the brake pad and braking system issues. However, upon information and belief, many Vehicle owners who experienced the Defect complained to Nissan. In fact, consumer complaints posted on publicly available websites reflect that Nissan received many such complaints directly from Vehicle owners.

39.    As demonstrated by the above examples, Vehicle owners and lessees have complained directly to Nissan/Nissan dealers on numerous occasions regarding the Defect. Such persistent evidence coming directly from consumers should have alerted Nissan to the Defect.

40.    Nissan closely reviews Nissan-related message boards, consumer websites, complaints on NHTSA's website, and other websites and sources relating to its vehicles and defects, complaints, or other issues pertaining to the Nissan's vehicles, including the Vehicles. It specifically pays considerable attention to brake issues in its automobiles because braking systems play a core function in vehicle operation and are tied to vehicle safety features.

41.     Nissan specifically monitors customers' complaints made to NHTSA. Federal law requires automakers like Nissan to be in close contact with NHTSA regarding potential automobile defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

42.     Automakers have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Report requirements. *Id.* Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of an ongoing obligation to identify potential defects in their vehicles, including safety defects. *Id.*

**D.     Nissan's Failure to Respond to the Defect**

43.     Nissan knew of the Defect at the time of sale or lease of the defective Vehicles. Plaintiff and Class members, however, had no such knowledge, as the Defect is latent in nature and not ascertainable upon reasonable examination of the Vehicle.

44.     Upon presentment of the Class Vehicles with the Defect, Class Members are typically told that the Defect is not covered under the applicable warranty as it presents wear and tear, and Class Members are forced to pay out of pocket for new brake pads.

45.     As seen above in numerous consumer complaints, the cost of replacing brake pads can be hundreds of dollars. Further, many Class Members report having to replace their brake pads multiple times in short periods, which can cost thousands of dollars.

46.     Despite having more than an adequate opportunity to successfully remedy the Defect in the Vehicles, Nissan has failed to do so.

47.     Nissan concealed, and continue to conceal, and omitted and omits, the fact that the Vehicles contain the Defect. Nissan also continues to conceal the fact that the replacement brake pads are defective. Despite its knowledge of the Defect, Nissan continued to sell Vehicles without disclosing this material information, a fact which Vehicle owners and lessees cannot reasonably discover until after the purchase is made.

48.     Then, when the brake pads fail, Nissan (through the sale of OEM parts) and Nissan's dealerships reap significant financial benefits by forcing consumers to replace parts at their own costs. And, because replacement parts are equally defective, it is only a matter of time before replacement brake pad premature wear and need to be replaced.

**E.     Nissan's Warranty Makes Promises About Defects**

49.     Nissan's applicable warranty provides that it covers "repairs needed to correct defects in materials or workmanship of all parts and components of each new Nissan vehicle supplied by Nissan . . . ."[5]

50.     Further, Nissan's warranty specifically states that Nissan "warrants NISSAN GENUINE and VALUE ADVANTAGE brake products (Brake Pads, Brake Rotors, Brake Drums, and Brake Shoes) of your" Nissan vehicle. The Warranty Booklet further states that these brake products are "warranted against defects in workmanship and/or materials for 36 months/36,000 miles, whichever occurs first, for both parts and labor."[6]

51.     Plaintiff and the Class members reasonably relied on Nissan's warranties regarding the quality, durability, and other material characteristics of its Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS AND ESTOPPEL

---

[5] https://www.nissanusa.com/content/dam/Nissan/us/manuals-and-guides/shared/2022/2022-nissan-warranty-booklet.pdf
[6] *Id*.

52.     Any applicable statutes of limitations have been tolled by Nissan's knowing and active concealment of the Defect and misrepresentations and omissions alleged herein. Through no fault or lack of diligence, Plaintiff and Class members were deceived regarding the Vehicles and could not reasonably discover the Defect or Nissan's deception with respect to the Defect.

53.     Plaintiff and Class members did not discover and did not know of any facts that would have caused a reasonable person to suspect that the Nissan were concealing a defect and/or the Vehicles contained the Defect and the corresponding safety risk. As alleged herein, the existence of the Defect was material to Plaintiff and Class members at all relevant times. Within the period of any applicable statutes of limitations, Plaintiff and Class members could not have discovered—through the exercise of reasonable diligence—the existence of the Defect or that Nissan were concealing the Defect.

54.     At all times, Nissan is and was under a continuous duty to disclose to Plaintiff and Class members the true standard, quality, and grade of the Vehicles and to disclose the Defect and corresponding safety risk due to its exclusive and superior knowledge of the existence and extent of the Defect in Vehicles.

55.     Nissan knowingly, actively, and affirmatively concealed the facts alleged herein, and the Defect. Plaintiff and Class members reasonably relied on Nissan's knowing, active, and affirmative concealment.

56.     For these reasons, all applicable statutes of limitation have been tolled based on, *inter alia*, the discovery rule and Nissan's fraudulent concealment. Nissan is estopped from relying on any statutes of limitations.

## CLASS ACTION ALLEGATIONS

57.     Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Nationwide Class as defined below:

> All persons residing in the United States who purchased or leased a model year 2022 or 2023 Nissan Pathfinder vehicle (the "Nationwide Class").

58.     In addition, or in the alternative to the Nationwide Class, Plaintiff seeks to represent each of the following state-wide classes (the Nationwide Class and State-Wide Classes are collectively referred to as the "Class"):

> All persons residing in Illinois who purchased or leased a model year 2022 or 2023 Nissan Pathfinder vehicle (the "Illinois Class").

59.     The above classes are referred to collectively as the Class. Excluded from the Class are Nissan, Nissan's affiliates, officers and directors, persons or entities that purchased the Vehicles for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change, or expand the class definitions if discovery and/or further investigation reveal that they should be expanded or otherwise modified.

60.     **Numerosity**: The Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class is unknown at this time, such information being in the sole possession of Nissan and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis alleges, that many thousands of impacted Vehicles have been sold and leased nationwide.

61.     **Existence/Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

> a.   whether Nissan engaged in the conduct alleged herein;
>
> b.   whether the brake pads in the Class Vehicles are defective;

c.  whether Nissan sold and leased Vehicles with pre-sale knowledge of the Defect;

d.  whether Nissan knew or should have known of the Defect, and if so, how long it knew of this Defect;

e.  whether Nissan knowingly failed to disclose the existence and cause of the Defect in the Vehicles;

f.  whether the Vehicles are unmerchantable;

g.  whether Nissan breached an express warranty made to Plaintiff and class members;

h.  whether Nissan's conduct alleged herein violates consumer protection statutes, warranty laws, and other laws as asserted herein;

i.  whether Plaintiff and Class Members overpaid for their Vehicles in light of the Defect;

j.  whether Plaintiff and Class Members have suffered an ascertainable loss;

k.  whether Plaintiff and Class Members are entitled to damages, including punitive damages, as a result of Nissan's conduct alleged herein, and if so, the amount or proper measure of those damages; and

l.  whether Plaintiff and Class Members are entitled to equitable relief, including but not limited to restitution and/or injunctive relief.

62.     **Typicality**: Plaintiff's claims are typical of the claims of the Class since the Plaintiff purchased a Vehicle containing brake pads uniformly plagued with the Defect, as did each member of the Class. Plaintiff and Class Members were injured in the same manner by Nissan's uniform course of conduct alleged herein. Plaintiff and all Class Members have the same claims against Nissan relating to the uniform conduct and uniform Defect alleged herein, and the same events giving rise to Plaintiff's claims for relief are identical to those giving rise to the claims of all Class Members. Plaintiff and all Class Members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Nissan's wrongful conduct in

selling and failing to remedy defective Vehicles. Plaintiff is advancing the same claims and legal theories on behalf of themselves and all absent Class Members.

63. **Adequacy**: Plaintiff is an adequate representative for the Class because Plaintiff's interests do not conflict with the interests of the Class that Plaintiff seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex class action litigation—including consumer and automobile defect class action cases—and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and experienced counsel.

64. **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and Class members. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Nissan's conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Nissan. Even if Class Members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based upon, inter alia, the records (including databases, e-mails, dealership records and files, etc.) Nissan maintain regarding its sales and leases of the Vehicles.

65.     Nissan has acted, and refuse to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (On behalf of Plaintiff and the Nationwide Class
### or, alternatively, the Illinois Class)

66.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

67.     Nissan Defendants are a "merchants" as defined under the Uniform Commercial Code ("UCC").

68.     The Class Vehicles are "goods" as defined under the UCC.

69.     Nissan expressly warranted that the Vehicles were of high quality and, at a minimum, would function properly. Nissan specifically warranted attributes and qualities of the Nissan Connect systems in the Vehicles as detailed above, including with respect to performance, quality, operability, convenience, and safety.

70.     Nissan also expressly warranted that it would repair and/or replace defects in material and/or workmanship free of charge that occurred during the applicable warranty periods.

71.     Nissan breached its warranties by selling to Plaintiff and the Class members Vehicles with defective rear braking systems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly, presenting an unreasonable safety risk. Nissan also breached its warranty by failing to provide an adequate repair when Plaintiff and the Class members presented their Vehicles to authorized Nissan dealers following manifestation of the Defect.

72.     These warranties formed the basis of the bargain that was reached when Plaintiff and other Class members purchased or leased their Vehicles equipped with defective Nissan brake systems.

73.     Plaintiff and Class members experienced the Defect within the warranty period. Despite the existence of express warranties (including but not limited to Nissan's New Vehicle Limited Warranty), Nissan failed to inform Plaintiff and Class members that the Vehicles are defective and failed to fix or eliminate the Defect.

74.     As a result of Nissan's actions, Plaintiff and Class members have suffered economic damages including, but not limited to, costly repairs, loss of Vehicle use, diminished value, substantial loss in value and resale value of the Vehicles, and other related damages.

75.     Nissan was provided notice of the issues complained of herein by numerous complaints filed against it, including the instant lawsuit, within a reasonable amount of time.

76.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Nissan's conduct described herein.

## COUNT II

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
**(On behalf of Plaintiff and the Nationwide Class
or, alternatively, the Illinois Class)**

77.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

78.     The Nissan Defendants are a "merchants" as defined under the UCC.

79.     The Class Vehicles are "goods" as defined under the UCC.

80.     A warranty that the Vehicles were in merchantable quality and condition is implied by law in transactions for the purchase and lease of Vehicles. Nissan impliedly warranted that the

Vehicles were of good and merchantable condition and quality, fit for their ordinary intended use, including with respect to safety, reliability, operability, and substantial freedom from defects.

81.     The Vehicles, when sold and leased, and at all times thereafter, were not in merchantable condition, are not fit for the ordinary purpose for which vehicles are used, and fall short of a minimum expectation of quality. Specifically, the Vehicles are inherently defective in that the rear braking systems—a central component to the Vehicles that go the Vehicles core functionality— are prone to a multitude of operational issues due to a common Defect. The Defect renders the Vehicles unmerchantable.

82.     Nissan was provided notice of the issues complained of herein by numerous complaints it received about them.

83.     Plaintiff and the other Class members have had sufficient direct dealings with either Nissan or its agents (e.g., dealerships and technical support) to establish privity of contract between Nissan on one hand, and Plaintiff and each of the Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the Class members are intended third-party beneficiaries of contracts between Nissan and its dealers (who are Nissan's agents), and specifically, of Nissan's implied warranties. The dealers were not intended to be the ultimate consumers of the Vehicles and have no rights under the warranty agreements provided with the Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

84.     As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured, and are entitled to damages.

## COUNT III

**Violation of Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. Ann. §§ 505/1-505/12 ("ICFA")**
**(On Behalf of Plaintiff and the Illinois Class)**

85. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

86. Defendants' conduct described herein violates the ICFA.

87. At all times relevant hereto, Plaintiff and the Illinois Class Members were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

88. At all times relevant hereto, Plaintiff and Illinois Class Members were also "consumers" as defined by the ICFA because they purchased vehicles from Defendants for their own personal use. 815 Ill. Comp. Stat. Ann. § 505/1(e).

89. The ICFA prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 Ill. Comp. Stat. 505/2.

90. Defendants' omissions as described herein constitute "unfair or deceptive practices" within the meaning of the ICFA because they failed to disclose the existence of the Defect.

91. Defendants intended that Plaintiff and Illinois Class Members rely on these omissions in deciding whether to purchase or lease a Vehicle.

92. The omissions described herein were material in that they would be important to a reasonable consumer making a vehicle purchase or lease decision.

93. Defendants' conduct described herein occurred in a course of conduct involving trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

94.     As a direct and proximate result of Defendants' conduct described herein, Plaintiff and Illinois Class Members were misled and/or deceived. Plaintiff and Illinois Class Members would not have paid for, or would have paid less for, the Class Vehicles had they been aware that they contained a material defect.

95.     Plaintiff and the Illinois Class Members seek all monetary and nonmonetary relief allowed by law, including injunctive relief, actual damages, punitive damages, and attorneys' fees and costs.

**COUNT IV**

**COMMON LAW FRAUD/FRAUDULENT CONCEALMENT**
**(On behalf of Plaintiff and the Nationwide Class**
**or, alternatively, the Illinois Class)**

96.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

97.     Nissan made material omissions concerning a presently existing or past fact. For example, Nissan knew about but did not fully and truthfully disclose to its customers the true nature of the inherent Defect with the Nissan braking system. A reasonable consumer would have expected that the Nissan braking system would not be defective and pose a serious safety risk.

98.     The facts concealed or not disclosed by Nissan to Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease Nissan' Vehicles or pay a lesser price.

99.     Nissan had a duty to disclose the true performance of the Vehicles and the Nissan braking system because knowledge of the Defect and its details were known and/or accessible only to Nissan; Nissan had superior knowledge and access to the facts; and Nissan knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class members. Nissan also had a duty to disclose because they made many general affirmative representations about the qualities of their

vehicles with respect to the Nissan braking system, including references as to convenience, safety, and general operability, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding the actual performance of their vehicles.

100. Had Plaintiff and the Class known about the defective nature of the Vehicles and their Nissan braking systems, they would not have purchased or leased the Vehicles or would have paid less for them.

101. As a result, Plaintiff and the other Class Members were fraudulently induced to lease and/or purchase the Vehicles with the Defect and all the resulting problems.

102. These omissions were made by Nissan with knowledge of their falsity, and with the intent that Plaintiff and Class Members rely upon them.

103. Plaintiff and Class Members reasonably relied on these omissions and suffered damages as a result. To the extent that Nissan's conduct was willful, oppressive, or malicious, Plaintiff and Class Members are entitled to an award of punitive damages.

## COUNT V

### UNJUST ENRICHMENT
**(On behalf of Plaintiff and the Nationwide Class
or, alternatively, the Illinois Class)**

104. Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

105. This claim is pleaded in the alternative to the other claims set forth herein.

106. As the intended and expected result of its conscious wrongdoing, Nissan profited and benefited from the purchase and lease of Vehicles equipped with defective Nissan braking systems.

107.     Nissan has voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Nissan's misconduct alleged herein, Plaintiff and the Class were not receiving Vehicles of the quality, nature, fitness, or value that had been represented by Nissan, and that a reasonable consumer would expect. Specifically, Plaintiff and the Class members expected that when they purchased or leased Vehicles, they would not be equipped with a defective rear braking system.

108.     Nissan has been unjustly enriched by their fraudulent, deceptive, unlawful, and unfair conduct, and withholding of benefits and unearned monies from Plaintiff and the Class, at the expense of these parties.

109.     Equity and good conscience militate against permitting Nissan to retain these profits and benefits under the circumstances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby request that this Court enter an Order against Nissan providing the following:

A.     Certification of the proposed Class(es), appointment of Plaintiff and Plaintiff's counsel to represent the proposed Class, and notice to the proposed Class to be paid by Nissan;

B.     Temporarily and permanently enjoining Nissan from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.     Injunctive relief in the form of a recall or free replacement program, a warranty extension, or other injunctive relief as deemed necessary;

D.     Equitable relief in the form of buyback of the Vehicles;

E.     Costs, restitution, damages, including punitive damages, penalties, and disgorgement in an amount to be determined at trial;

F.      An Order requiring Nissan to pay both pre- and post-judgment interest on any amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims so triable.

Dated: October 13, 2025

_____
John Spragens (TN Bar No. 31445)
*john@spragenslaw.com*
**SPRAGENS LAW PLC**
915 Rep. John Lewis Way S., Suite 100
Nashville, TN 37203
T: (615) 983-8900
F: (615) 682-8533

*Local Counsel for Plaintiff and the Proposed Class*

Andrew W. Ferich (*pro hac vice* to be filed)
*aferich@ahdootwolfson.com*
**AHDOOT & WOLFSON, PC**
201 King of Prussia Road, Suite 650
Radnor, PA 19087
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

Benjamin F. Johns (*pro hac vice* to be filed)
*bjohns@shublawyers.com*
Samantha E. Holbrook (*pro hac vice* to be filed)
*sholbrook@shublawyers.com*
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Phone: (610) 477-8380

*Counsel for Plaintiff and the Proposed Class*